UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WISCONSIN

UNIVERSITY OF WISCONSIN HOSPITAL
AND CLINICS, INC., and UNIVERSITY OF
WISCONSIN MEDICAL FOUNDATION,
INC.,

        Plaintiffs,

Case No: 12-cv-31

vs.

EPCO CARBON DIOXIDE PRODUCTS, INC.
HEALTHCARE PLAN,

        Defendants.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The present case is an action for recovery of healthcare benefits owed Brennan Cain as a plan participant of the EPCO Carbon Dioxide Healthcare Plan, Inc. (the "Plan"), an ERISA-governed, self-funded group health plan sponsored by EPCO Carbon Dioxide Products, Inc. ("EPCO").

Brennan Cain was injured as a result of a fall down the stairs on Christmas Eve, 2010, which resulted in serious head injuries which eventually caused his death. He was admitted to and treated by the Plaintiffs' University of Wisconsin Hospitals and Clinics, Inc. and the University of Wisconsin Medical Foundation, Inc. (collectively "UW Hospital"). The UW Hospital provided medical care and treatment to Brennan totaling $561,358.44, for which they submitted claims to the Plan for medical expenses incurred in treating Brennan. Defendant

1

denied the claims. UW Hospital filed this action, as the assignee for Brennan, seeking to recover benefits due under the Plan on the grounds that payment was improperly denied.

The Plan's Plan Administrator denied Brennan's claim for benefits under an alcohol limitation included in the general limitations section of the Plan. The alcohol limitation excludes payment of "charges for accidental bodily injury sustained or illness contracted as a result of alcohol or drug use." The Plan Administrator, without reviewing any evidence other than Brennan's blood alcohol content, concluded that Brennan's injuries were sustained as a result of alcohol use and denied coverage.

Brennan was sent a form letter denying coverage. The only reasoning, rationale, or explanation given for denying coverage in that letter was that there was "alcohol involved at the time of the incident."

Because the Plan Administrator was given sole discretion to interpret the Plan, this Court may only overturn the Plan's denial of benefits if the denial was arbitrary and capricious. In this case, the Plan Administrator's denial was arbitrary and capricious, as it was only based on the blood alcohol content, and the Plan Administrator did not investigate other possible causes of the injury before its denial. In addition, the denial letter was insufficient as it did not give a detailed rationale for the denial. Summary Judgment should be entered in favor of UW Hospital accordingly.

## FACTUAL BACKGROUND

### I. THE INJURY

Brennan Cain had spent Christmas Eve (December 24, 2010) working as the plant manager at the EPCO facility in Monroe, Wisconsin. (Plaintiff's Proposed Findings of Fact [hereinafter 'PPFOF'] ¶ 20.) After getting off of work, Brennan, Brennan's girlfriend Beth

Sutton, and Brennan's sister and brother-in-law, Temple and Patrick Palmer, visited two bars in the area of the Palmer's home. (PPFOF ¶ 21.) They returned to the Palmer's residence between 11:00 p.m. and midnight on Christmas Eve. Brennan, who was tired after a day of working, retired to the basement, as Beth Sutton, Temple and Patrick Palmer stayed awake to socialize. (PPFOF ¶¶ 23-24.) Brennan slept for approximately two hours, and then returned to the main floor of the home, to convince Beth Sutton to go to sleep as well. (PPFOF ¶ 25.) According to his sister, Brennan looked tired and like he had just woken up from sleeping. (PPFOF ¶ 26.) It was a little before 2:30 a.m. on Christmas Day. (PPFOF ¶ 19.) Brennan was able to convince Beth Sutton to go to sleep, and as they both descended the stairs to the bedroom, Brennan slipped on one of the top stairs and fell down the stairs. (PPFOF ¶ 27.)

No cause of the fall has been definitively determined. Witnesses present at the home agree that, at the time of the fall, Brennan was not unsteady on his feet. (PPFOF ¶ 30.) He was not slurring his speech in a way that indicated he was intoxicated. (PPFOF ¶ 31.) In fact, none of the witnesses present expressed any concern about Brennan's sobriety. (PPFOF ¶ 32.) There were no objects on the stairs that may have caused the fall. (PPFOF ¶ 33.) However, Brennan was wearing slippers at the time of his fall. (PPFOF ¶ 28.) In addition, the first stair leading to the basement is only three to four inches high, significantly shorter than the rest of the stairs. (PPFOF ¶ 34.)

Immediately after Brennan's fall, Patrick Palmer called 9-1-1 and Brennan was rushed by ambulance to UW Hospital. (PPFOF ¶¶ 35-36.) He was treated for a Level I trauma. (PPFOF ¶ 36.) The emergency room report indicated that Brennan had an EtOH (blood alcohol level) of .25g/100ml upon admission. (PPFOF ¶ 39).

Cottingham & Butler, EPCO's insurance broker, has two divisions relevant to this action: SISCO and Healthcorp. (PPFOF ¶ 12.) SISCO Benfits, a third-party administrator, processes claims made under the Plan. PPFOF ¶ 10.) Healthcorp, the Plan's review organization, handles precertification of managed care for medical necessity. (PPFOF ¶ 11.)

Following Brennan's admission to UW Hospital, UW Hospital notified Brenda Kennicker, a Healthcorp employee, of Brennan's claim. (PPFOF ¶ 37.) As the entirety of its claim investigation, SISCO obtained a copy of Brennan's emergency room report. (PPFOF ¶ 39.) No individual from EPCO, SISCO, or Healthcorp ever went to the Palmer residence to examine the stairs or investigate the accident. (PPFOF ¶ 40.) No individual from EPCO, SISCO, or Healthcorp ever contacted Beth Sutton, Temple or Patrick Palmer in regards to the investigation to determine why Brennan fell. (PPFOF ¶ 41.)

The Plan Administrator is Eric Wiesemann. (PPFOF ¶ 16.) The Plan Administrator was notified by a representative of Cottingham & Butler , that Brennan was "intoxicated" at the time he fell and that his BAC was .25g/100ml. (PPFOF ¶ 42.) The Plan Administrator reviewed the alcohol limitation in the Plan document and interpreted that limitation to mean that coverage is excluded for claims where alcohol use was a cause or substantial cause of bodily injury. (PPFOF ¶¶ 43-44.)

The Plan Administrator came to the conclusion that a person with a .25 BAC would experience severe impairment to his motor skills. (PPFOF ¶ 45.) As someone not trained in medicine or how alcohol affects the body, Mr. Wiesemann only compared Brennan's BAC to the allowable blood alcohol content to legally drive a vehicle. (PPFOF ¶¶ 46-47.)

The Plan Administrator did not identify an alternate cause of Injury. (PPFOF ¶ 48.) However, the Plan Administrator also did not look any further than the BAC to find a cause. (PPFOF ¶ 49.)

## II. THE PLAN DOCUMENT

EPCO established EPCO Carbon Dioxide Products, Inc. Healthcare Plan, an ERISA employee health care plan, in 2005 to provide health insurance coverage to all eligible employees, including employees within the State of Wisconsin. (PPFOF ¶¶ 4-5.) Brennan, EPCO's Monroe, Wisconsin plant manager was an eligible plan participant at the time of his fall. (PPFOF ¶ 6.)

The Plan Document does grant the Plan Administrator sole authority and discretion to interpret the Plan (PPFOF ¶ 7.) The Plan reads:

> The Plan Administrator or its delegate has the sole authority and discretion to interpret and construe the terms of the Plan to determine any and all questions in relation to the administration, interpretation or operation of the Plan, including, but not limited to, eligibility under the Plan, payment of benefits of claims under

(PPFOF ¶ 8.) The Plan also contains the following limitation:

> 52. Charges for accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug use.

(PPFOF ¶ 9.)

Cottingham & Butler have two divisions relevant to this action: SISCO and Healthcorp. (PPFOF ¶ 12.) SISCO Benfits, a third-party administrator, processes claims made under the Plan. PPFOF ¶ 10.) Healthcorp, the Plan's review organization, handles precertification of managed care for medical necessity. (PPFOF ¶ 11.)

As the third-party claims handler, SISCO's role was limited to managing case files, conducting claims subrogation investigation, and managing communications between the plan

5

member and the plan administrator. (PPFOF ¶ 13.) Neither SISCO nor Healthcorp had any role in interpreting plan language or making eligibility or coverage determinations. (PPFOF ¶¶ 14-15.) All plan interpretation and coverage determinations were made by Eric Wiesemann, the Plan's Plan Administrator. (PPFOF ¶ 16.)

The Plan Administrator based his decision in the present case on information collected and obtained as of January 13, 2011. (PPFOF ¶ 17.) No one – not the Plan Administrator, a representative of SISCO or Healthcorp, or Charles Craft, president of EPCO – investigated alternative causes of the accident before determining the accident was a "result" of the use of alcohol. (PPFOF ¶¶ 18, 50.)

### III.   THE DENIAL LETTER

After determining that Brennan's claim for benefits was not covered by the Plan, the Plan Administrator advised Brad Plummer of Cottingham & Butler that Brennan's claim for benefits was not covered by the Plan due to the alcohol limitation, and instructed him to direct SISCO to issue a letter denying Brennan's claim for benefits. (PPFOF ¶ 53.) On January 13, 2011, Ann Cook drafted and mailed two letters denying benefits to Brennan, care of his sister Temple Palmer, and Plaintiffs. (PPFOF ¶ 54-55.) One letter sent January 13, 2011, is signed. (PPFOF ¶ 56.) The other letter, sent January 13, 2011, is unsigned and has slightly different language regarding the denial of benefits. (PPFOF ¶ 57.)

> The signed denial letter reads:
>
> Based on our investigation of the accident it has been determined there was alcohol involved during the time of the incident. It is also documented that you fell at your sister's home. You may wish to file a claim against the homeowner's insurance. No payment is available under the Health Plan.

(PPFOF ¶ 58.)

The unsigned denial letter reads:

Based on our investigation of the accident it has been determined there was alcohol involved during the time of the incident. It is also documented that you fell at your sister's home. You may wish to file a claim against the homeowner's insurance *as there may be negligence or liability*. *Unfortunately,* no payment is available under the Health Plan.

(PPFOF ¶ 59.) (emphasis added to denote changes from signed letter).

In both letters, the reason for the denial is identical: "it has been determined there was alcohol involved during the time of the accident."

## LEGAL STANDARD

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To overcome summary judgment, the nonmoving party may not simply rest upon allegations in their pleadings. Fed. R. Civ. P. 56(e); **Johnson v. City of Fort Wayne**, 91 F.3d 922, 931 (7th Cir. 1996); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). Instead, it must produce enough specific material facts in support of its claim to sustain its burden at trial. **Celotex Corp.**, 477 U.S. at 322. An issue is "genuine" if it is one upon which a reasonable jury could return a verdict in favor of the non-moving party. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). "Material" facts are "outcome determinative under the governing law." **Whetstine v. Gates Rubber Co.**, 895 F.2d 388, 392 (7th Cir. 1990). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment. . . ." **Richter v. Hook-SuperX**, 1422 F.3d 1024 (7th Cir. 1998)(citing **Anderson**, 477 U.S. at 247-48.

7

V. **STANDARD OF REVIEW**

When reviewing a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B), courts must apply the "arbitrary and capricious" standard of review if the Plan gives the Plan Administrator discretionary authority to determine eligibility for benefits or to interpret the terms of the Plan. *Carr v. Gates Health Care Plan*, 195 F. 2d 292, 294 (7th Cir. 1999); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the present action, the Plan gives the Plan Administrator discretionary authority to determine eligibility for benefits or to interpret the terms of the Plan. Therefore, the Court must review this case using the arbitrary and capricious standard of review.

## ARGUMENT

VI. **THE PLAN ADMINISTRATOR'S COVERAGE DETERMINATION WAS AN ABUSE OF DISCRETION.**

    **A. The Plan Administrator's interpretation of the Plan's alcohol limitation and consequential denial of benefits was arbitrary and capricious.**

The Plan Administrator interpreted the alcohol limitation, which excludes coverage for "charges for accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug use," to preclude coverage where alcohol was <u>a cause or a substantial cause of the plan member's injury</u>. This interpretation is arbitrary and capricious because no interpretation was required. The phrase "as a result of alcohol or drug use" is clear. The injury must <u>result</u> from the alcohol use.

Where the Plan is clear, the Plan Administrator should not be interpreting it to distort the meaning. The terms "result" and "cause" are not synonymous. Therefore, replacing "result" with "cause" is an arbitrary change in the meaning of the Plan.

Defendant relies on *Smith v. Stonebridge Life Insurance Co.*, 473 F. Supp. 2d 903 (W.D. Wis. 2007). However, in that case the parties disputed the meaning of the term "cause." Plaintiff's argued that the phrase could mean "*a* cause," "*a substantial* cause," or "*the* cause." *Id.* at 909. There was no dispute as to the term "results from" which was also present in that policy and in that case there was no argument raised that results and cause had either the same or a different meaning. *Id.*

And while the Plan Administrator interpreted the alcohol limitation, to preclude coverage where alcohol was a cause or a substantial cause of the plan member's injury, this is not the interpretation that was used when denying coverage to Brennan. The letter Brennan received from SISCO capriciously listed "alcohol involvement" as the reason for the denial. Clearly, "cause" and "involvement" have different meanings. Involvement of alcohol requires a significantly smaller role of alcohol than does cause. Involvement of alcohol means the mere presence of alcohol, whether or not that alcohol was at all a *cause* of the injury.

### B. Even if the Plan Administrator's interpretation of the Plan's alcohol limitation reasonable, the application of that interpretation and consequential denial of benefits was arbitrary and capricious.

If the Plan Administrator were to make an informed judgment based on a reasonable interpretation of the Plan document and the relevant facts, the denial would be final. *Carr v. Gates Health Care Plan*, 195 F. 3d at 294. However, in the present case, we do not have a Plan Administrator making an informed judgment based on relevant facts. Instead, we have a Plan Administrator making an uninformed judgment based on only one fact.

Plaintiffs do not dispute that Brennan had a blood alcohol content of .25g/100ml. However, there were other factors that may have contributed to Brennan's fall. It was 2:00 a.m. Brennan was tired after a day of working and had just woken up from a two hour nap. The stairs

9

were strangely sized and he was wearing slippers that he may have tripped on. Maybe, he just was not paying attention to the stairs. Even individuals with a blood alcohol content of zero fall occasionally.

Defendants do not dispute that the only basis for the Plan Administrator's determination was Brennan's BAC. At the time of the decision to deny Brennan's benefits, no other investigation had been undertaken, and no one inquired as to whether there could be a different cause of Brennan's injury. A Plan Administrator has a duty to conduct a good faith investigation to determine the facts material to a claim for benefits. ***Rekowski v. Metropolitan Life Ins. Co.***, 417 F. Supp. 2d 1040, 1050 (W.D. Wis. 2006). Further, *Carr* requires the Plan Administrator to make an informed decision in order for his decision to be upheld. The Plan Administrator did not make himself informed. ***Carr***, 195 F. 3d at 294.

In ***Quinn v. Blue Cross and Blue Shield Assoc.***, 161 F. 3d 472, 476 (7th Cir. 1998), the court held that the insurer reached an arbitrary decision to deny disability coverage, where the insurer determined that the plaintiff, Quinn, was capable of performing another job with a similar salary level without knowing what the plaintiff's job duties entailed, what her exertional requirements were, what training and experience she possessed, or any transferable skills she obtained. In that case, the Program Secretary, Calhoon (like the Plan Administrator) based her conclusion on her own opinion of what the plaintiff did in her job roles. ***Id.***

> It was insufficient for Calhoon to determine that Quinn could perform any clerical job in the marketplace simply because she was not highly paid or highly skilled. In fact, when Calhoon surmised that Quinn could be a "claims analyst," she admitted that she had no idea whether Quinn had either the training or education to perform that job. For Calhoon to make a reasonable determination that Quinn could work at a job with a comparable salary range as a payroll accounts assistant, at the very least she should have identified the skills necessary to obtain another job and whether Quinn possessed those skills. By not even performing the slightest inquiry into this matter, Calhoon made her decision arbitrarily and capriciously.

*Id.* (internal citations omitted.) In the case at bar, the Plan Administrator based his conclusion of cause on his opinion of what an individual can do at a certain BAC.

The Plan Administrator relies on Brennan's blood alcohol content in relation to the legal limit to drive as his definitive proof that Brennan's fall was caused by alcohol. However, Brennan was not driving a vehicle, and his relation to the legal limit to drive is irrelevant. Navigating a set of stairs is very different than navigating the roads. Furthermore, the Plan Administrator is not trained and has no professional experience to determine why the legal limit to operate a motor vehicle is set at .08g/100ml and how that should equate to whether one can safely navigate stairs.

Defendant relies on *Smith*, 473 F. Supp. 2d 903. There, the legal limit was used to argue that alcohol was a cause of the injury. *Id.* at 909. However, this case is distinguishable from the case at bar in two ways. First, in *Smith*, the injured person was driving. Therefore, his blood alcohol content in relation to the legal limit to drive a motor vehicle is relevant. It is relevant because the legal limit to drive was set at .08g/100ml because experts have determined that above that blood alcohol content a person is not able to safely operate a motor vehicle. In the case at bar, the Plan Administrator had no such reference instructing him at what blood alcohol content a person cannot safely navigate stairs. Second, operating a motor vehicle with a BAC of over .08g/100ml is against the law in the State of Wisconsin. It is not illegal to have a blood alcohol content of over .08g/100ml when in a residence and not operating a motor vehicle.

## VII. THE PLAN ADMINISTRATOR DID NOT CONSULT AN EXPERT UNTIL WELL AFTER THE COVERAGE DETERMINATION WAS MADE, AND THEREFORE, IS IRRELEVANT TO WHETHER THE DETERMINATION WAS ARBITRARY AND CAPRICIOUS.

Defendant's expert, Dr. Long, was not consulted until well after the coverage determination was made and therefore is irrelevant. The issue in this case is not whether alcohol

caused Brennan's injury, but rather, (1) whether the Plan Administrator's interpretation of the Plan was arbitrary and capricious and (2) whether the Plan Administrator's determination that alcohol was a cause of Brennan's injury was arbitrary and capricious. ". . . . [I]n evaluating a plan administrator's decision under an arbitrary and capricious standard of review, we should consider only the evidence that was before the administrator when it made its decision." *Hess v. Hardford Life & Accident Ins. Co.*, 274 F. 2d 456, (7th Cir. 2001). Since the Plan Administrator did not have the expert's opinion at the time of the determination, the Court should not consider it when reviewing the Plan Administrator's decision.

Even if the Court does consider Dr. Long's opinion, there are problems with that opinion. First, Dr. Long opines that Brennan would have demonstrated significant impairment, including impairment of vision, reaction times, and coordination. However, there is no testimony that Brennan was demonstrating impairment at the time of his fall. Two of the three witnesses saw no impairment from Brennan. The third witness saw slight impairment 2 hours prior to the fall, but none at the time of the fall.

Also, Dr. Long concludes that due to the level of impairment Brennan would have experienced, he would not have been able to properly and safely navigate a set of stairs. This is in contradiction to the undisputed fact that Brennan had gone down and up the stairs already that evening. Not only had he navigated the stairs safely once before, but he did so at presumably a higher blood alcohol content, since he did not consume alcohol between the first time he navigated the stairs the first time, and the second time he attempted to navigate the stairs two hours later.

Finally, Dr. Long's opinion is made without any investigation other than blood alcohol content. He, like the Plan Administrator, did not look at the stairs, consider the time of night, or

the fact that Brennan was just woken from sleep. He did not speak to any witnesses or photos, relying solely on blood alcohol content.

**VIII.    EVEN IF THE DECISION TO DENY BENEFITS WAS REASONABLE, THE DENIAL OF BENEFITS DOES NOT SATISFY THE ARBITRARY AND CAPRICIOUS STANDARD BECAUSE THE DEFENDANT FAILED TO GIVE A DETAILED RATIONALE FOR THE DENIAL.**

Even if the Court were to find that the Plan Administrator's interpretation of the plan was reasonable, and that the Plan Administrator's application of that Plan was reasonable, the Court should still grant Summary Judgment to the Plaintiffs on the grounds that the denial letter sent by the Defendants failed to give a detailed rationale for the denial.

In ***Summers v. Touchpoint Health Plan, Inc.***, 749 N.W.2d 182 (Wis. 2008), the Wisconsin Supreme Court held that they would not uphold a decision of an ERISA Plan Administrator to deny benefits "where there is an absence of reasoning in the record to support it." *Id.* at 188. To satisfy the arbitrary and capricious standard, a letter denying benefits "must provide adequate reasoning to explain the decision, so the beneficiary will have a "clear and precise understanding" of the decision." *Id.* at 189. Further, "[b]are conclusions are not sufficient rationale." *Id.*

In *Summers*, the Court held that the termination of benefits for a patient's cancer treatment under an exclusion of experimental treatments was arbitrary and capricious. *Id.* at 185. The court relied on the language of denial letters sent from the plan administrator to the insured which failed to give specific and detailed reasons for denying coverage of the treatment sought. *Id.* It found the denial letter to be inadequate because it failed to provide the insured with "the required clear and precise understanding" of why their coverage request was denied. *Id.* at 189 (quoting ***Hackett v. Xerox Corp. Long-Term Disability Income Plan***, 315 F. 3d 771, 777 (7th Cir. 2003)).

The letter sent by SISCO denying Brennan's request for coverage under the EPCO Plan is similarly inadequate. The SISCO letter contains a mere two sentences addressed to the denial of Brennan's request for benefits under the exclusion for alcohol related injuries. The letter states that "[t]he Plan does not cover charges involving alcohol related incidents," a bare conclusion referencing the language of the policy. The letter also states that "[b]ased on our investigation of the accident it has been determined that there was alcohol involved during the time of the incident." The letter does not contain an attachment showing the specific and detailed results of its investigation, nor does it include an explanation of its conclusion that the involvement of alcohol is enough to exclude Brennan from coverage under the allegedly applicable exclusion. Furthermore, the Plan Administrator's interpretation was not that the limitation denies coverage where alcohol is involved, but rather denies coverage where alcohol was a cause or substantial cause of the injury. Therefore, the denial letter is even misleading and does not provide "the required clear and precise understanding" of why their coverage request was denied. ***Id.* at 189**

The lack of detailed rationale is likely due to the lack of investigation done by the Defendants. Nevertheless, it is still insufficient as a denial letter.

## CONCLUSION

The Plan Administrator arbitrarily and capriciously concluded that Brennan's injuries were a result of alcohol use, and arbitrarily and capriciously denied him benefits under the Plan. The interpretation of the alcohol limitation was arbitrary and capricious, and even the application of the alcohol limitation as interpreted was arbitrary and capricious.

Even if the decision was reasonable, the denial of Benefits does not satisfy the arbitrary and capricious standard because the Defendant failed to give a detailed rationale for the denial,

as the denial letter sent by the Defendant was insufficient to provide the insured with "the required clear and precise understanding" of why their coverage request was denied.

As the interpretation, application, and denial of the Plan's alcohol exclusion was arbitrary and capricious, the Court must enter Summary Judgment in favor of the Plaintiffs.

Dated at Watertown, Wisconsin on this 13th day of December, 2012.

        /s Mark S. Sweet
Attorney Mark S. Sweet
State Bar No: 1019001
Attorney for the Plaintiffs, UNIVERSITY OF WISCONSIN HOSPITAL AND CLINICS, INC., AND UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC.
Neuberger, Wakeman, Lorenz, Griggs & Sweet
136 Hospital Drive
Watertown, WI 53098
Telephone: (920) 261-1630
Fax: (920) 261-0339
Email: msweet@nlgslaw.com