IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNIVERSITY OF WISCONSIN HOSPITAL
AND CLINICS, INC., and UNIVERSITY OF
WISCONSIN MEDICAL FOUNDATION,
INC.,

                        Plaintiff                        OPINION AND ORDER

   v.

                                                   12-cv-031-wmc

EPCO CARBON DIOXIDE PRODUCTS, INC.
HEALTHCARE PLAN,

                        Defendant.
_____

Early in the morning on December 25, 2010, Brennan Cain fell down the basement stairs at his sister's house, suffering severe injuries. Despite receiving extensive treatment at the University of Wisconsin Hospital, Mr. Cain ultimately died from his injuries. Defendant EPCO Carbon Dioxide Products, Inc. Healthcare Plan ("the Plan"), an ERISA-governed group health plan, denied Cain's request for reimbursement of his medical expenses, citing a coverage exclusion for "accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug use." As assignees of Cain's claim, plaintiffs University of Wisconsin Hospital and Clinics, Inc. and University of Wisconsin Medical Foundation, Inc. bring this case under § 502 of ERISA (29 U.S.C. § 1132(a)(1)(B), contending that the decision to deny reimbursement was arbitrary and capricious.[1] After reviewing the parties' cross-motions for summary judgment, the court

---

[1] Jurisdiction is proper in this court under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). Because the alleged denial of benefits occurred in the Western District of Wisconsin, venue is proper in the pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2).

concludes that the plan administrator lacked enough information to make an informed decision that the accident was a *result of* Cain's alcohol use. Given his blood alcohol level was three times the legal limit to drive a vehicle, it was certainly reasonable to assume that his ability to negotiate a flight of stairs was materially impaired, making an accident more likely. Still, the plan administrator here was required to do more than assume; he was obligated to conduct some investigation of potential separate and intervening causes that may have produced the accident even if Cain had been sober. Accordingly, the court will grant summary judgment to plaintiffs on the issue of wrongful benefit denial, and will remand to the administrator for reconsideration in light of all relevant facts.

UNDISPUTED FACTS[2]

**A. The Plan**

Defendant EPCO Carbon Dioxide Products, Inc. Health Care Plan was established in 2005 by EPCO Carbon Dioxide Products, Inc. to provide health insurance coverage to its eligible employees. The Plan is subject to regulation under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. On December 25, 2010, Brennan Cain, EPCO's Monroe, Wisconsin plant manager, was an eligible participant in the Plan.

The Plan document grants the plan administrator, Eric Wiesemann, "sole authority and discretion to interpret and construe the terms of the Plan to determine any

---

[2] From the parties' complaint, answer, proposed findings of facts and responses, and evidentiary submissions (to the extent not contradicted), the court finds the following facts undisputed for the purpose of deciding the present motions.

and all questions in relation to . . . payment of benefits or claims under the Plan." The Plan also employs a third-party insurance broker, Cottingham & Butler ("the claim manager"), to oversee claim files, conduct necessary claim investigations, and manage communications between Plan members and the administrator. The claim manager is not to play any role in interpreting Plan language or in making eligibility or coverage determinations, although it appears to have taken on the role of deciding appeals from the plan administrator's decisions. The Plan contains a coverage exclusion for "[c]harges for accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug use."

### B. The Injury

On Christmas Eve of 2010, Brennan Cain spent the day working at the EPCO plant, then went out drinking with his sister Temple Palmer, his brother-in-law Patrick Palmer, and his girlfriend Beth Sutton. The group returned to the Palmers' home sometime between 11:00 p.m. and midnight. Eventually Cain went to bed in the basement while the others remained upstairs drinking and socializing.

At approximately 2:30 a.m., Cain came upstairs to convince Beth Sutton to come to bed. To Sutton and Temple Palmer, Cain appeared sleepy, but not obviously intoxicated, as he was steady on his feet and did not slur his speech. As Cain and Sutton descended to the Palmers' basement, Cain slipped on the second stair and fell. Patrick Palmer called 9-1-1 immediately, and Cain was rushed by ambulance to the hospital, where he underwent treatment for a Level I head trauma.

At the time of his fall, Brennan Cain was wearing rubber-soled slippers and there were no objects lying on the stairs. The first step leading down to the basement is approximately three to four inches high, significantly shorter than the rest of the steps. According to the emergency room report, Cain had a blood alcohol content (BAC) of 0.25g/l00ml upon admission to the hospital.

### C. The Claim and Denial

Soon after Mr. Cain presented his claim for reimbursement, the claim manager, Cottingham & Butler, obtained a copy of the emergency room report and determined that Cain's fall was not caused by a stroke. Cottingham & Butler did not, however, arrange a visit to the Palmer residence to examine the stairs, nor did it investigate the incident by speaking to Patrick Palmer or Beth Sutton, the only eyewitness to the fall. The parties dispute whether the claim manager talked to Temple Palmer about the cause of the accident.

Regardless, the only information considered by the plan administrator, Eric Wiesemann, was that (1) Cain fell down a flight of stairs on Christmas Eve and (2) Cain's BAC was 0.25 at the time of his admission to the hospital. Wiesemann did not inquire into the condition of the house or stairs, Cain's physical ability to traverse stairs when completely sober, or any other potential cause. Instead, he concluded that a person with a 0.25 BAC would experience severe impairment of his motor skills -- analogizing to the 0.08 BAC legal limit for operating a vehicle -- and reasoned that because no other cause for the accident was identified in the materials supplied to him, Mr. Cain's

intoxication must have been a cause of the fall. Interpreting the alcohol and drug coverage limitation to exclude coverage for claims where alcohol use was "a cause or substantial cause" of bodily injury, Wieseman concluded that the exclusion applied to Cain's claim. On January 13, 2011, acting on behalf of the Plan, the claim manager sent Cain a letter of denial.

### D. The Appeal and Medical Evaluation

Cain appealed the denial of benefits on July 5, 2011. (Dkt. #29-1 at pp. 000123-24.) On July 29, the claim manager denied the appeal by letter, on the same grounds set forth in Wieseman's initial denial: the "Plan does not cover charges involving alcohol related accidents." (*Id.* at 000109.)

In anticipation of this litigation, the Plan also referred Mr. Cain's case to Dr. Christopher Long, a board certified forensic toxicologist. On August 25, 2012, Dr. Long wrote a letter opining that with a BAC of 0.25, Cain would have demonstrated significant impairment of the nervous system, including impairment of his vision, depth perception, reaction times, and muscular coordination. Finding that Brennan Cain would not have been able to properly and safely navigate a set of stairs in this condition, Dr. Long concluded that Mr. Cain's use of alcohol prior to his fall was a cause of his injuries.

OPINION

The parties agree that the applicable standard of review is the deferential "arbitrary and capricious" standard because the Plan gives the administrator discretionary authority to determine eligibility for benefits and to construe its terms. *Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "Under that standard, an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Id.* In fact, the court may reverse an administrator's decision only if it is "downright unreasonable." *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 677 (7th Cir. 2004). The court considers reasonableness in light of the following factors: "the impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995).

### A.   Interpretation of the Plan Language

The relevant coverage limitation excludes treatment for "accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug use." The plan administrator interpreted the phrase "as a result of" to require that alcohol or drug use be "a cause or

substantial cause" of the injury. On its face, this is a reasonable (i.e., not arbitrary) interpretation, assuming that "cause" refers to "actual cause."[3]

## B. Application of the Alcohol Exclusion to the Facts

The plan administrator based his denial of the claim on his belief that Mr. Cain's motor skills and reaction time were significantly impaired by intoxication, resulting in the accident. By his own admission, the administrator did not investigate whether any other circumstantial factors, including the design and construction of the stairs, Mr. Cain's clothing and footwear, obstructions on the stairs, Mr. Cain's underlying physical capabilities (when sober), or any other factor might have resulted in the fall even if Cain had been sober. Moreover, to the extent the claim manager conducted an investigation of any kind (this is somewhat unclear), it did not convey its findings to the administrator.

This was error. To make a reasonable decision about causation, the administrator should at least have considered the possibility that there might have been an independent and supervening cause for the fall, and made an investigation into the circumstances of the accident to rule out this possibility. "Before denying benefits, administrators of ERISA plans are required to have enough evidence to allow them to make a reasonable decision. ERISA does not require a 'full-blown' investigation, but it does demand a

---

[3] "Cause," cannot simply mean to "make the injury more likely in the abstract," because that would put it at odds with the definition of "result": "to happen or issue as a consequence or effect." *Webster's New World College Dictionary* (4th ed. 2001). On the other hand, the definition does not say "*the* result of," arguably suggesting that more than one factor may contribute to the injury. The plan administrator does not explain which of these interpretations he adopted, and why, nor will the court do so in the first instance given that a remand is required for further inquiry into the accident's cause in any event.

'reasonable inquiry' into [the relevant circumstances]. If [an insurer does] not have evidence on which to base its conclusion, it [will] have acted unreasonably." *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 961 (7th Cir. 2001). See also *Rekowski v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1040, 1050-51 (W.D. Wis. 2006) ("[A] plan administrator has a duty to conduct a good faith investigation to determine the relevant facts and [] this duty might require the administrator to interview eyewitnesses and undertake other efforts to fill in factual gaps . . . ." (citing *Schreck v. Reliance Standard Life Ins.*, 104 F. Supp. 2d 1373 (S.D. Fla. 2000)).

Two comparable cases persuade the court that the administrator acted arbitrarily and capriciously in failing to make any investigation of the facts here. The first is *Olson v. Troike*, 959 F. Supp. 847 (N.D. Ill. 1997), in which an insurer denied a health benefit claim brought by an injured motorcyclist by asserting that his intoxication at the time of his accident triggered an alcoholism exclusion. The district court rejected this conclusion because it was not supported by an adequate investigation. The court noted that

> the information before [the plan administrators] at the time of [the] decision was really very limited. Indeed, [the administrators] concede that the only records considered in that regard were hospital reports that had been tendered to them for payment of [the] claim.

*Id.* at 856. Because they had not done an investigation into the circumstances of the accident,

> [the administrators] could not rule out several possible causes for [the] accident that would be unrelated to [the driver's] level of intoxication, including (1) a hazardous roadway condition, (2) the fault of another driver or (3) the malfunction of [the] motorcycle.

8

*Id.* at 857. The court concluded that

> [it] is both a common sense conclusion and a reasonable conclusion that [the] accident was the result of [the driver's] alcohol impaired ability to control his motorcycle.
>
> . . .
>
> But it is impermissible for [the administrators] . . . to shirk their own responsibility to exercise the fiduciary power vested in them. As Plan administrators, [they] had a fiduciary duty to "discharge [their] duties with respect to the plan solely in the interest of the participants and beneficiaries" of the Plan (29 U.S.C. § 1104(1)(1)). Encompassed within that responsibility was a duty of proper investigation of the matters essential to the denial of [the] claim.

*Id.* (internal citations omitted).

The second case is *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189 (11th Cir. 2010), in which an insured became paralyzed after diving off a dock into the ocean while heavily intoxicated. The court held that the benefit plan "had the responsibility to fully investigate [the] claims before denying benefits." *Id.* at 1199. It explained that

> [w]hile we agree that it is reasonable to draw the conclusion that [plaintiff] was under the influence of alcohol, it is unreasonable to conclude that his intoxication caused his injury. . . . [T]here is no mandate in the policy that legal intoxication shall be deemed the cause of the accident. The plain language of the provision is clear that the presence of alcohol does not warrant the presumption of causation . . . . Without this presumption, causation is a fact specific inquiry.
>
> . . .
>
> . . . As a fiduciary, [the insurer] is required to make a reasoned determination after a diligent investigation. [It] did not conduct a reasonable investigation sufficient to show that [the plaintiff] is not entitled to benefits. There was no investigation regarding the series of events leading up to the [accident].

*Id.* at 1200.

The activities in these cases -- riding a motorcycle and diving -- admittedly involve substantially greater risk on their face than traversing a flight of stairs. Serious accidents on motorcycles are so numerous that separate insurance is required, and diving accidents are also likely more common (at least on a percentage basis of activity) than accidents on stairs. But falls down stairs through causes other than intoxication are not so uncommon that the administrator was in a position to assume that alcohol was the cause.[4] The two cases cited above articulate a plan administrator's duty to obtain enough facts to make a responsible decision on a benefit claim. For no other reason than that the plan administrator for the EPCO Plan failed to meet this duty, the court must grant summary judgment in favor of plaintiffs.

This holding is not meant to suggest that, after investigating and considering all the relevant facts, the plan administrator will be unable to reasonably conclude that the fall was a result of Mr. Cain's intoxication. Significantly, the circumstantial factors identified by plaintiffs in this case -- that Mr. Cain was tired, wearing slippers, and attempting to negotiate an uneven top stair -- hardly compel the conclusion that the accident would have occurred in the absence of alcohol.[5] If the administrator had

---

[4] There may be statistical studies which demonstrate how much more likely it is for a heavily intoxicated person to fall on stairs than a sober one, but the record does not show that the administrator relied on any such study in lieu of actually investigating the accident, and at any rate it is doubtful that the administrator could have relied on statistical evidence and still met his burden under the circumstances.

[5] It is not enough, as plaintiffs contend, that these factors "may have contributed to [Cain's] fall." (Dkt. #41 at 9.) The administrator will be upheld so long as he reasonably determines, after an investigation into the circumstances, that if Cain had been sober the accident would not have occurred.

investigated and considered these factors, the court may have upheld his decision as based on substantial evidence. But this amounts to mere speculation at this point.

### C. Remedy

Having found that the plan administrator was arbitrary and capricious in denying Mr. Cain's application for benefits, this court is directed by the Seventh Circuit to focus on the "claimant's benefit status prior to the denial" to determine the appropriate remedy. *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (citing *Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 629 (7th Cir. 2005)). The goal is to "restor[e] the status quo prior to the defective proceedings." *Schneider*, 422 F.3d at 629. The court will therefore remand the application to the plan administrator to determine Mr. Cain's eligibility for benefits, correcting for the error identified in this opinion. See *Majeski v. Metro Life Ins. Co.*, 590 F.3d 478 (7th Cir. 2009) (noting that it is a "rare case where the record . . . contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is [entitled to benefits].").

ORDER

IT IS ORDERED that:

1) plaintiffs University of Wisconsin Hospital and Clinics, Inc. and University of Wisconsin Medical Foundation, Inc.'s motion for summary judgment (dkt. #38) is GRANTED;

2) defendant EPCO Carbon Dioxide Products, Inc. Healthcare Plan's motion for summary judgment (dkt. #23) is DENIED;

3) this matter is remanded to the plan administrator for a determination of benefit eligibility consistent with the court's opinion; and

4) the clerk of court is directed to enter judgment and close this case.

Entered this 18th day of April, 2013.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge